UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ORLANDO JONES,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE et al.,<br><br>Respondents. | CASE NO. 2:26-cv-01335-JNW<br><br>ORDER GRANTING PETITION FOR HABEAS CORPUS |

This matter comes before the Court on pro se Petitioner Orlando Jones' petition for writ of habeas corpus. Dkt. No. 5. Having reviewed the petition, the Government Respondents' return, Dkt. No. 8, and all other supporting materials, the Court GRANTS the petition.

## 1. BACKGROUND

Petitioner Orlando Jones is a 33-year-old citizen of Belize. Dkt. No. 10-4 at 2. On or about October 31, 2022, Jones entered the United States near Hidalgo, Texas, where he was detained by United States Border Patrol Officers. *Id.* at 3. He claimed fear of return to Belize and was referred to U.S. Citizenship and Immigrations Services ("USCIS") for a credible fear interview. Dkt. No. 9 ¶¶ 6–8. After a USCIS

ORDER GRANTING PETITION FOR HABEAS CORPUS - 1

asylum officer determined that Jones had no credible fear returning to Belize, Jones requested review of the decision by an Immigration Judge ("IJ"), *see* Dkt. No. 10-3, but his case was not referred. Dkt. No. 9 ¶ 8. On December 27, 2022, he was released from custody on parole, pursuant to the Immigration and Nationality Act ("INA") Section 212(d)(5). Dkt. No. 10-4 at 3; Dkt. No. 9 ¶ 9.

On May 1, 2025, Jones was convicted of two counts of assault in the fourth degree constituting domestic violence in King County Superior Court. Dkt. No. 10-4 at 3. He received a deferred sentence of twelve months incarceration. *Id.* On June 24, 2025, Jones reported to the Tukwila Office of United States Immigration and Customs Enforcement ("ICE"), Office of Enforcement and Removal Operations ("ERO"). While there, ERO reviewed Jones' immigration case and criminal conviction, took him into custody for removal proceedings, and transferred to the Northwest ICE Processing Center ("NWIPC"). Dkt. No. 9 ¶¶ 12–13.

While at NWIPC, on August 4, 2025, Jones' previous no credible fear determination was vacated by an IJ, who found that he had "established significant possibility of eligibility for asylum." Dkt. No. 10-6. No subsequent credible fear interview appears to have taken place.

Jones was issued a Notice to Appear ("NTA") on October 31, 2025, charging him as inadmissible to the United States pursuant to INA § 212(a)(6)(A)(i). Dkt. No. 10-5. He applied for relief from removal, Dkt. No. 9 ¶ 18, which was denied by IJ John Odell on December 31, 2025. Dkt. No. 10-7. Jones appealed the IJ's decision to the BIA, where it remains pending. Dkt. No. 9 ¶ 21.

ORDER GRANTING PETITION FOR HABEAS CORPUS - 2

Jones now petitions the Court for a writ of habeas corpus claiming that his prolonged detention violates the Due Process Clause of the Fifth Amendment and asks for his immediate release. Dkt. No. 5.

## 2.  DISCUSSION

### 2.1  Legal standard.

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. §§ 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

**2.2    Jones is not subject to mandatory detention under 8 U.S.C. § 1225(b).**

Respondents argue that Jones is subject to mandatory detention 8 U.S.C. § 1225(b) because he is an applicant for admission. The Court disagrees.

Section 1225 governs the inspection and processing of noncitizens at the border. *Jennings*, 583 U.S. at 287. It subjects those who are "seeking admission," but "not clearly and beyond a doubt entitled to be admitted," to mandatory detention pending removal proceedings. 8 U.S.C. § 1225(b)(2)(A). The circuits are split on whether this provision applies to noncitizens arrested in the interior rather than at the border or a port of entry. The Second and Eleventh Circuits have held that it does not, reasoning that the provision requires both that a noncitizen be an "applicant for admission" and be "seeking admission," and that the latter phrase describes a present-tense activity—the act of presenting oneself at the border and asking to enter—that a noncitizen arrested in the interior is not engaged in. *See Barbosa da Cunha v. Freden*, --- F.4th ----, 2026 WL 1146044 (2d Cir. Apr. 28, 2026); *Hernandez Alvarez v. Warden*, --- F.4th ----, 2026 WL 1243395 (11th Cir. May 6, 2026). The Seventh Circuit has reached a similar conclusion. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, --- F.4th ---, 2026 WL 1223250 (7th Cir. May 5, 2026). The Fifth and Eighth Circuits have reached the contrary conclusion. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). The Ninth Circuit has not yet addressed the question.

This Court agrees with and adopts the reasoning of the Second and Eleventh Circuits, which is consistent with the approach taken by courts in this District. *See Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1327–28 (W.D. Wash. 2025);

ORDER GRANTING PETITION FOR HABEAS CORPUS - 4

*Torres v. Wamsley*, 807 F. Supp. 3d 1266, 1270–71 (W.D. Wash. 2025). As those courts have explained, Congress employed a statutory term of art—"applicant for admission"—using the word "deemed" to create a legal fiction encompassing noncitizens present in the United States who are not actually applying for admission. 8 U.S.C. § 1225(a)(1). But Congress did not similarly deem anyone to be "seeking admission." The ordinary meaning of that phrase—a present participle denoting ongoing activity—refers to a person currently trying to enter the country. *da Cunha*, 2026 WL 1146044, at *6–9; *Hernandez Alvarez*, 2026 WL 1243395, at *6–10. Treating the two phrases as synonymous, as the Fifth and Eighth Circuits do, renders "seeking admission" surplusage in the very subsection where it appears. *See Buenrostro-Mendez*, 166 F.4th at 510–12 (Douglas, J., dissenting); *Avila*, 170 F.4th at 1139–40 (Erickson, J., dissenting). A noncitizen who has been residing in the interior of the country is not "seeking admission" under Section 1225(b)(2)(A).

Applying these principles, Jones is not subject to mandatory detention under § 1225(b). He was arrested at the Tukwila ERO office—not a port of entry or the border. Dkt. No. 10-4 at 3. He was residing in the United States, not seeking admission. The Government's records confirm as much. The Notice to Appear charged Jones as a noncitizen "present in the United States who has not been admitted or paroled" and expressly declined to classify him as an "arriving alien." Dkt. No. 10-4 at 2. *See Barrios Osorio v. Bondi*, No. 2:26-CV-00317-JNW, 2026 WL 607765, at *2 (W.D. Wash. Mar. 4, 2026) (relying on identical NTA language as evidence noncitizen was not "seeking admission"); *Cotoc Yac De Yac v. Hermosillo*, 2:25-cv-02593-DGE-TLF, 2026 WL 124334, at *3 (W.D. Wash. Jan. 16, 2026) (same)

*Garcia Gabriel v. Hermosillo*, 2:25-CV-02594-DGE-GJL, 2026 WL 194233 at \*3 (W.D. Wash. Jan. 26, 2026) (same).

The Court concludes that Petitioner's detention is therefore governed by 8 U.S.C. § 1226(a), not § 1225(b), and that he is not subject to mandatory detention.

## 2.3     Jones' prolonged detention violates due process.

Regardless of the statutory basis for Jones' detention, it still must comport with due process. *See Espinoza Palacios v. Hermosillo,* No. 2:26-CV-491-JNW, 2026 WL 686138, at \*6 n.1 (W.D. Wash. Mar. 11, 2026) (collecting cases). Jones argues that his re-detention by ICE without notice and a pre-deprivation hearing violates due process. Dkt. No. 5 at 5. The Court agrees.

To determine what process the Government must provide before depriving a person of a constitutionally protected interest, courts apply the test set out in *Mathews v. Eldridge,* 424 U.S. 319, 334–35 (1976). They weigh: (1) the private interest at stake; (2) the risk of erroneous deprivation through existing procedures and "the probable value, if any, of additional or substitute procedural safeguards"; and (3) the Government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

### 2.3.1     Liberty interest.

Considering the first *Mathews* factor, Jones has a strong liberty interest in not being detained. As the overwhelming majority of courts in this district and throughout the country have found, an individual's "interest in not being detained is

ORDER GRANTING PETITION FOR HABEAS CORPUS - 6

'the most elemental of liberty interests.'" *Osuna Benitez v. Hermosillo*, No. 2:25-CV-02535-BAT, 2025 WL 3763932, at *3 (W.D. Wash. Dec. 30, 2025) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects.").

Here, Jones was initially detained for two months in 2022 after his initial immigration arrest in Texas. He was then released on parole, which vested in him "a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (citing *Doe v. Becerra*, 787 F.Supp.3d at 1093). Upon ERO's "review of his case," he was re-detained. Dkt. No. 9 ¶ 12. Respondents provide no evidence that this review, the impetus for Petitioner's re-detention, was done "through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted. *Ramirez Tesara*, 800 F. Supp. 3d at 1136 (citing *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)). The Due Process Clause requires more, and therefore the Court finds that the first *Mathews* factor weighs in Jones' favor.

Of note, Respondents repeatedly claim that Jones was "an applicant for admission who has never been admitted or paroled into the United States." Dkt. No. 8. The assertion that Jones was never paroled is not supported by the record. Respondents rely on the declaration of Delano Dumo, an ERO Deportation Officer assigned to NWIPC. Dkt. No. 9. In his declaration, Dumo states that "Petitioner was released from immigration custody," *id.* ¶ 9, but does not specify the authority

ORDER GRANTING PETITION FOR HABEAS CORPUS - 7

under which Jones was released. Buried in the record, however, is DHS's summary of Jones' immigration history which states that his release was made "pursuant to INA 212(d)(5)," *see* Dkt. No. 10-4, which is considered parole for the purposes of the due process clause. *See Manshavi v Warden of Desert View Annex Detention Facility et al.*, No. 5:26-CV-01654-AYP, 2026 WL 1195997, at *3 (C.D. Cal. Apr. 24, 2026) ("When DHS granted Petitioner parole under INA § 212(d)(5)(A), it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process.").

### 2.3.2    Risk of erroneous deprivation.

Considering the second *Mathews* factor, Jones has established a high risk of erroneous deprivation. Respondents argue that Jones "already received extensive process," including "a credible fear interview, review by an immigration judge, a full merits hearing on December 31, 2025, and the opportunity to appeal to the BIA." Dkt. No. 8 at 8. But—save for the credible fear interview—none of these processes took place prior to Jones' re-detention. Indeed, Respondents admit that their "decision to continue detention rests on *objective evidence* of Petitioner's criminal convictions." Dkt. No. 8 at 8 (emphasis added). Not only is this evidence not properly presented in the record, but there is nothing to suggest that Jones "had [ ] notice or opportunity to be heard before being arrested and detained" by ERO. *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1203 (W.D. Wash. 2025). Accordingly, the second factor weighs in favor of Jones.

### 2.3.3    Government's interest is minimal.

Finally, considering the third *Mathews* factor, the Court finds that the Government's interests in Jones' re-detention without a hearing is minimal. As this Court has previously concluded, "the Government's interest in re-detaining non-citizens previously released without a hearing is low." *Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *8 (W.D. Wash. Mar. 11, 2026) (citing *Ledesma Gonzalez*, 2025 WL 2841574, at *8). Respondents argue that the Government's existing interests in enforcing immigration laws are "heightened" due to Jones' convictions. Dkt. No. 8 at 8. But, this is still not enough to show that a pre-deprivation hearing was not required in this instance. *See Sarwari v. Wamsley*, No. 2:26-CV-00121-TL, 2026 WL 279968, at *6 (W.D. Wash. Feb. 3, 2026) (Government's "interests are not threatened if a pre-deprivation hearing is required."). Accordingly, the Court finds that the third *Mathews* factor tips slightly in favor of Jones.

Based on this review of the *Mathews* factors, the Court finds that Jones has a protected liberty interest in his continuing release from custody, and that due process required that he receive a hearing before an immigration judge before he could be re-detained. Accordingly, the Court finds that Jones is in custody in violation of the Constitution of the United States. Jones must be released and not re-detained without a hearing before an immigration judge.

**2.4    The Government must follow the law if it re-detains Jones.**

Having found due process violations, the Court must determine the appropriate remedy. A post-deprivation hearing cannot serve as an adequate procedural safeguard here because it occurs after the fact and thus cannot prevent an erroneous deprivation of liberty. *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *see also Kumar v. Wamsley*, No. 2:25-CV-01772-JHC-BAT, 2025 WL 2677089, at *3 (W.D. Wash. Sept. 17, 2025) ("[R]elease following post-deprivation procedures is insufficient to remedy the alleged harm because the alleged harm, i.e., potentially erroneous detention, has happened and is continuing to occur.").

Jones was paroled under INA § 212(d)(5) on December 27, 2022. *See* Dkt. No. 10-4 at 3. He lived in the community for roughly two and a half years before ERO took him into custody at a scheduled check-in on June 24, 2025. The Government never terminated his parole. The record contains no evidence that ICE provided Jones with written notice of parole termination under 8 C.F.R. § 212.5(e)(2)(i), or that any DHS official made the required determination that "neither humanitarian reasons nor public benefit warrants the continued presence" of Jones in the United States. *Id.* Jones has now been detained for nearly eleven months without ever having received a hearing before a neutral decisionmaker to evaluate whether his detention is warranted. Immediate release is the appropriate remedy. *See Izaguirre Del Toro v. Warden Nw. ICE Processing Ctr.*, No. C26-0741-KKE, 2026 WL 1283517, at *7 (W.D. Wash. May 11, 2026) (ordering immediate release where the Government failed to comply with § 212.5 before revoking parole); *Torres v. Hermosillo*, No. 2:25-cv-02687-LK, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20,

2026) (same); *Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *10 (W.D. Wash. Mar. 11, 2026) (ordering release where ICE revoked release and re-detained noncitizens without pre-deprivation process).

The Court further finds that injunctive relief protecting Jones from re-detention is warranted. Jones has suffered irreparable harm—nearly eleven months of unlawful detention and the ongoing violation of his constitutional and statutory rights—that no monetary remedy can redress. The balance of hardships favors Jones, as the injunction requires only that the Government comply with its own regulations and the Constitution before re-detaining him. And the public interest is served by an order requiring the Government to follow the law. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Espinoza Palacios*, 2026 WL 686138, at *10 ("[R]equiring the Government to follow constitutional procedures imposes no undue hardship."). There is also a cognizable danger of recurrence: ICE has already detained Jones without complying with § 212.5 or providing constitutionally adequate process, and the Government's position throughout this case—that Jones is subject to mandatory detention under § 1225(b) and that no hearing is required—demonstrates an intention to continue the challenged conduct. *Espinoza Palacios*, 2026 WL 686138, at *10 (finding the Government "has expressed 'an avowed intention to continue the challenged conduct'"); *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003). Jones expressly requests this relief. Dkt. No. 5 at 2; Dkt. No. 2 at 6. Courts in this district have routinely granted it. *See, e.g.*, *Nguyen*, 2026 WL 183819, at *6; *Wana v. Bondi*, No. 25-cv-2321, 2025 WL 3628634, at *6 (W.D. Wash. Dec. 15, 2025) (prohibiting re-detention without notice and hearing);

ORDER GRANTING PETITION FOR HABEAS CORPUS - 11

*Tzafir*, 2026 WL 74088, at *5 (same); *Yuksek v. Bondi*, No. 25-cv-2555, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same).

Accordingly, the Court prohibits Jones's re-detention unless the Government first complies with the pre-deprivation procedures set forth in 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e), and provides written notice of the basis for the proposed re-detention and a hearing before a neutral decisionmaker at which the Government bears the burden of proving by clear and convincing evidence that Jones is a danger to the community or a flight risk and that no conditions of release would mitigate those risks. *See Izaguirre Del Toro*, 2026 WL 1283517, at *7; *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *Espinoza Palacios*, 2026 WL 686138, at *10–11.

**2.5    The motion for a temporary restraining order is denied without prejudice.**

On April 17, 2026, Petitioner moved for a temporary restraining order, seeking to "enjoin[] the Respondents from transferring him out of this district during the pendency of this habeas action seeking immediate release, and an order to Respondents enjoining them from re-detaining Petitioner without affording him adequate procedures guaranteed by the United States Constitution. Dkt. No. 2 at 1. The Court has now ruled on the habeas petition, Dkt. No. 5, and thus denies the TRO motion as moot. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 720 (W.D. Wash. 2025).

### 3.  CONCLUSION

Accordingly, the Court ORDERS as follows:

ORDER GRANTING PETITION FOR HABEAS CORPUS - 12

1. The Petition for a Writ of Habeas Corpus, Dkt. No. 5, is GRANTED.

2. Respondents must release Petitioner from detention within TWENTY-FOUR (24) hours of this order, subject to the conditions of his most recent release order.

3. Respondents are permanently enjoined from re-detaining Petitioners during the pendency of their removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that each Petitioner is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks

4. Within FORTY-EIGHT (48) hours of this Order, Respondents SHALL provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

5. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

6. Petitioner's Motion for Temporary Restraining Order, Dkt. No. 2, is DENIED as MOOT.

Dated this 20th day of May, 2026.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING PETITION FOR HABEAS CORPUS - 13